UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00259-JVS (KESx) | Date | November 6, 2023 |
| Title | Tu Le et al. v. Prestige Community Credit Union et al. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** [IN CHAMBERS] Order Regarding Motion for Summary Judgment [53] and Motion for Class Certification [32, 60]

Before the Court are two motions. Defendant Prestige Community Credit Union and Does 1–10 ("Prestige") moves for summary judgment on all claims. (Mot. for Summary Judgment ("MSJ"), Dkt. No. 54.) Plaintiffs Tu Le, Mai T. Ly, and Geneva Nguyen (collectively, "Plaintiffs") opposed the motion. (Opp'n to MSJ, Dkt. No. 77 (sealed).) Prestige replied. (Reply to MSJ, Dkt. No. 79.) Plaintiffs move for class certification. (Mot. for Class Certification, Dkt. No. 33 (sealed); Amended Notice of Mot. for Class Certification, Dkt. No. 60.) Prestige opposed the motion. (Opp'n to Class Certification, Dkt. No. 73.) Plaintiffs replied. (Reply to Class Certification, Dkt. No. 84.)

For the following reasons, the Court **GRANTS** Prestige's motion for summary judgment and **DENIES** Plaintiffs' motion for class certification as moot.

## I. BACKGROUND

The following facts are undisputed and come from Prestige's Reply to Plaintiffs' Statement of Genuine Disputes of Material Facts ("SOF"). (SOF, Dkt. No. 80.)

This case arises out of a multi-million-dollar Ponzi scheme that was "perpetrated by third parties Kent R.E. Whitney ("Whitney") and . . . the Church for the Healthy Self ("Church") also known as the CHS Trust." (Id. ¶ 1.) Before the events giving rise to this litigation, Whitney served about 30 months in prison for a financial fraud conviction. (Id. ¶ 2.) Plaintiffs allege that "Prestige knew of Whitney's prior financial fraud conviction, but nonetheless, served as the primary bank for the Whitney Ponzi scheme for its entire

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00259-JVS (KESx) | Date | November 6, 2023 |
| Title | Tu Le et al. v. Prestige Community Credit Union et al. | | |

4-year existence." (Id. ¶ 3.)

    Prestige is a Texas community credit union organized in and conducting business solely in Texas. (Id. ¶¶ 68, 74.) Prestige has only two locations. (Id. ¶ 74.) One in Dallas, Texas, and the other in McKinney, Texas. (Id.) All of Prestige's employees work in Texas. (Id.) Prestige has no physical location or employees outside of Texas. (Id.) The Texas Credit Union Department is responsible for supervising and regulating Prestige. (Id. ¶ 75.) In September 2014, the Church opened a bank account with Prestige at the North Dallas Texas branch. (Id. ¶ 4.) Richard King ("King"), who was part of the Church, did not know about Whitney's wrongful intentions. (Id. ¶ 5.) King had a prior business relationship with Prestige as an individual account holder. (Id.)

    King spoke with Karen Gugino ("Gugino"), Prestige's Operations Manager of 14 years, and Jaime Fuentes, a member services representative, to open a new account for the Church. (Id. ¶ 6.) King described the account holder as a church with a "Holistic Concept," which Gugino took to mean "a church with a focus on health." (Id. ¶ 7.) Gugino never spoke to any person affiliated with the Church other than King regarding the account. (Id. ¶ 8.)

    When Prestige opens a new account, Prestige performs due diligence to comply with standard best practices and the Bank Secrecy Act. (Id. ¶ 11.) This includes using the ChexSystems procedure to perform a financial background check on proposed account holders. (Id.) ChexSystems "provides a determination whether to engage with a particular customer." (Id.) Prestige's due diligence also includes obtaining basic information from the customer via a Checklist and independently verifying all the information given by the customer on the Checklist. (Id. ¶ 12.)

    Before the Church account, Prestige had not previously held an account for a non-profit church. (Id. ¶ 13.) As a result, it investigated the procedures and protocols for a non-profit church account through the Texas Credit Union League, which employs attorneys who specialize in responding to inquiries about compliance questions. (Id.) After discussing the proposed Church account with the Texas Credit Union League, Gugino developed a Business Account Questionnaire for Religious Organizations ("Checklist"), which listed the required information and documentation needed. (Id. ¶ 14.) Gugino and King discussed the information requested on the Checklist, which Gugino filled out. (Id. ¶ 15.) King then came into Prestige and picked up the Checklist.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00259-JVS (KESx) | Date | November 6, 2023 |
| Title | Tu Le et al. v. Prestige Community Credit Union et al. | | |

(Id. ¶ 16.) King obtained the signatures of the four proposed individual account agents, which included Whitney, and returned the documentation to Prestige.[1] (Id. ¶ 17.)

Shortly after, Prestige conducted its routine ChexSystems report on the proposed account agents and the Church. (Id. ¶ 18.) All of the proposed individual account agents were accepted except for Whitney, who was declined by ChexSystems. (Id.) ChexSystems "provides verification of the identity of individuals and businesses by cross-referencing more than 23 billion records from multiple and independent data sources and is utilized by financial institutions as standard due diligence in verifying backgrounds and other information on potential account holders." (Id.) The ChexSystems report identified Whitney as having had three bank accounts that were closed with a total unpaid sum of $23,990.31.[2] (Id. ¶ 19.) Moreover, "ChexSystems is not designed to provide any criminal background information."[3] (Id. ¶ 22.) Rather, it

---

[1] It is disputed whether the signatures had to be notarized. (Declaration of Enrique Rodriguez ("Rodriguez Decl."), Dkt. No. 77–2 ¶ 20.)

[2] It is disputed that this is the only information that ChexSystems provided given that there is a second page that is missing. (Declaration of Karen Gugino ("Gugino Decl."), Dkt. No. 62, Ex. 3, at 46:21–47:2.) At oral argument, Plaintiffs cited Patriot Rail Corp. v. Sierra R.R. Co., No. 2:09-cv-9, 2015 U.S. Dist. LEXIS 102844 (E.D. Cal. Aug. 4, 2015) for the proposition that an adverse inference should be drawn given that the second page of the ChexSystems report is missing. However, Patriot Rail Corp. concerned an adverse inference from the destruction or spoliation of evidence with respect to jury instructions, not summary judgment. Additionally, "[f]or the rule to apply, it is essential that the evidence in question be within the party's control. Furthermore, it must appear that an actual suppression or withholding of the evidence has occurred. No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." Id. at *29 (internal quotation marks and citation omitted). But based on the evidence and undisputed facts, it does not appear that Prestige actually or purposefully withheld the second page of the ChexSystems report. (See generally SOF.) Based on the evidence before the Court, the circumstances indicate that the second page was lost or accidentally destroyed. At oral argument, Plaintiffs did not provide any evidence that suggested otherwise. Moreover, as discussed below, no evidence has been presented that suggest that the second page of the ChexSystems report includes criminal background information.

[3] At oral argument, Plaintiffs failed to present any facts showing or even supporting an inference that the ChexSystems report included a criminal background check. Nor did Plaintiffs explain how the information on the FIS Qualifile webpage infers that ChexSystems reports include criminal background information. Plaintiffs misinterpret what is actually stated on the FIS Qualifile website. The website

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00259-JVS (KESx) | Date | November 6, 2023 |
| Title | Tu Le et al. v. Prestige Community Credit Union et al. | | |

"only provides financial information regarding other financial institutions." (Id.) Prestige had no knowledge that Whitney had been previously convicted of fraud. (Id. ¶ 20.) King had some knowledge of Whitney's past criminal conduct, but King never shared this knowledge with Prestige. (Id. ¶ 21.) After Gugino notified her supervisor that ChexSystems declined Whitney, Gugino opened the Church account without Whitney on the account or as an account agent. (Id. ¶ 23.) Prestige crossed Whitney's name off the authorized signature card and allowed King to open the Church account. (Id. ¶ 24.) But Prestige never opened an account for CHS Trust. (Id. ¶ 59.)

As part of its due diligence, Prestige obtained all the Checklist information and conducted the ChexSystems report. (Id. ¶ 25.) Additionally, Prestige obtained and reviewed the Church's federal corporate tax identification number, proof of nonprofit tax-exempt status, Secretary of State Certificate of Filing of Corporation, Corporate By-laws, and Statement of Belief. (Id. ¶ 26.) Prestige also reviewed each account agent's government-issued identification and a Letter from the Church authorizing each agent. (Id.) The Church By-laws and other documents submitted to Prestige stated that Whitney was the Church's president. (Id. ¶ 31.)

Credit unions, such as Prestige, have shared branch agreements that allow credit unions to process transactions for each other. (Id. ¶ 38.) Shared branches are not owned and operated by Prestige. (Id.) In the United States, there are more than 5,000 shared branch locations. (Id.) Each shared branch location is a "separate and distinct financial institution," which is governed and operated under its own rules and guidelines. (Id.) Checking deposits and withdrawals are difficult to monitor, particularly when done at

---

states that "Qualifile, is a real-time DDA origination solution that uses behavioral risk segmentation to ensure you open the right accounts in any channel based on your institution's risk strategy. Using ChexSystems proprietary database, external public records and credit bureau data (optional), you'll have the insights you need to maximize cross-sell, build profitable relationships and prevent losses." At oral argument, Plaintiffs argued that ChexSystems does include criminal background check information because it includes "external public records." Qualifile, FIS Global, https://www.fisglobal.com/en/products/decision-solutions-for-risk/qualifile (last visited Nov. 3, 2023). However, Plaintiffs failed to cite any authority suggesting that "external public records" automatically includes "criminal background information." Nor is it clear how knowledge of Whitney's past criminal conviction results in Prestige's knowledge that the Church was engaging in fraud since it is undisputed that Whitney was not allowed on the Church account at Prestige. Thus, Whitney was not allowed to make any transactions on the Prestige account.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00259-JVS (KESx) | Date | November 6, 2023 |
| Title | Tu Le et al. v. Prestige Community Credit Union et al. | | |

shared branches. (Id. ¶ 37.) There is also no obligation to monitor transactions that occur at shared branches. (Id.) Nor is Prestige provided with individual checks and deposit details that take place at a shared branch location.[4] (Id. ¶ 64.) Shared branches must also follow Bank Secrecy Act standards when processing individual checks and deposits. (Id.) Moreover, according to Gugino, Prestige's designated Bank Secrecy Act officer, the Bank Secrecy Act requirements focus on monitoring cash transactions. (Id. ¶ 36.) Thus, neither Gugino nor Sammy Shanafelt, Prestige's President and CEO, were aware that most of the Church's transactions were conducted at shared branches. (Id. ¶ 39.) Gugino and Shanafelt knew the Church used shared branches, included some in California, but they did not know the volume or dollar amounts of such transactions. (Id.) When Church had an account at Prestige, Prestige did not notice any transactions that appeared investment related. (Id. ¶ 40.) While King recalled mentioning investments to Shanafelt on one occasion, King had no recollection of when the discussion took place. (Id. ¶ 9.) Moreover, King did not notice any strange or unusual banking activity. (Id.) Because multi-million-dollar churches are not unusual in Texas, Prestige believed the Church was doing well with its member contributions and appeared to be growing. (Id. ¶ 41.)

However, when the Church made a cash deposit of more than $10,000 into the Church account through a shared branch, Prestige informed King that, for any cash deposit of over $10,000, the shared branch is required to submit a Currency Transaction Report. (Id. ¶ 42.) On this occasion, Prestige received a copy of the Currency Transaction Report that the shared branch submitted. (Id.) As Prestige's President and CEO, Shanafelt reviews customer balance reports quarterly in order to keep himself informed for internal audit purposes and to report to Prestige's Board of Directors. (Id. ¶ 47.) Because Prestige is an "oil-based credit union," large deposits are not uncommon with expected balances between $1 million to $2 million. (Id. ¶ 48.) However, when Shanafelt reviewed the Church's balance report toward the end of 2018, he noticed that

---

[4] At oral argument, Plaintiffs failed to present evidence that disputed the aforementioned facts regarding the review of deposits and withdrawals made at shared branches. Nor did Plaintiffs cite any evidence that Whitney himself made deposits or withdrawals at Prestige. As previously stated, Whitney was not on the Church account at Prestige. Nor did Whitney make any withdrawals or deposits from the Church account. In fact, Plaintiffs evidence shows that none of the transaction requests that were sent to Prestige via email were from Whitney. (See generally Declaration of Steven M. Nuñez ("Nuñez Decl."), Dkt. No. 78, Ex. 7.) All of the emails concerning the Church account at Prestige were sent from Richard King or on behalf of Richard King. (Id.) Plaintiffs also conceded at oral argument that banks do not have an obligation to see where an account holder sends his money when sending a check.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00259-JVS (KESx) | Date | November 6, 2023 |
| Title | Tu Le et al. v. Prestige Community Credit Union et al. | | |

the balance exceeded $3 million. (Id. ¶ 49.) As a result, Shanafelt wondered if the Church recently performed upgrades to its facilities to explain the increase in revenue. (Id. ¶ 50.) Shanafelt had previously reviewed the Church facility online and believed it was merely a warehouse-type building. (Id.) He looked online again to see if improvements or a change of location were made, but they were not. (Id.) Then, Shanafelt asked Gugino if she was aware of any circumstances to explain the large balance in the Church account. (Id. ¶ 51.) Gugino told Shanafelt that there had been a Currency Transaction Report filed on the Church, which caused suspicion regarding the Church account. (Id. ¶ 52.) The Securities and Exchange Commission and FBI became involved with an unannounced visit and subpoena issued to Prestige for the Church account. (Id. ¶ 53.) The Securities and Exchange Commission investigation resulted in foreclosure of Prestige's Church account and recovery of $4,125,898.19. (Id. ¶ 54.)

Other Church Company entities opened accounts at other national banks, including Bank of America, Wells Fargo, and TD Ameritrade. (Id. ¶ 67.) Plaintiffs chose to only sue Prestige even though the Securities and Exchange Commission chose not to pursue claims against any financial institutions. (Id. ¶ 70.)

## II. Legal Standard

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim. Fed. R. Civ. P. 56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . ." (internal quotation marks omitted)).

Facts are "material" if they are necessary to the proof or defense of a claim, and are determined by referring to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To determine if a dispute about a material fact is "genuine," the trial court must not weigh the evidence and instead must draw all reasonable inferences in the nonmoving party's favor. Tolan v. Cotton, 572 U.S. 650, 655–59 (2014) (per curiam). The nonmoving party cannot manufacture a "genuine dispute" by relying on allegations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:22-cv-00259-JVS (KESx)      Date November 6, 2023

Title     Tu Le et al. v. Prestige Community Credit Union et al.

in the pleadings. Anderson, 477 U.S. at 251; Oracle Am., Inc. v. Hewlett Packard Enter. Co., 971 F.3d 1042, 1049 (9th Cir. 2020).

    A trial court may not resolve issues of credibility to determine whether a fact is "genuinely disputed." Tolan, 572 U.S. at 658–59. To do so is to improperly weigh the evidence. Id. A court may discount uncorroborated, self-serving testimony where "it states only conclusions and not facts." Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497–98 (9th Cir. 2015). However, a court may not discount "self-serving" testimony that includes contrary factual assertions and requires the observation of a witness's demeanor to assess credibility. See Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017). Furthermore, an undisputed fact may support several reasonable inferences, but a trial judge must resolve those differing inferences in favor of the nonmoving party. Hunt v. Cromartie, 526 U.S. 541 (1999). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.[5]

    The moving party has the initial burden of establishing the absence of a material fact for trial. Id. at 256. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)][6] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. To defeat summary judgment, the nonmoving party who bears the burden at trial must present more than a "mere scintilla" of "affirmative evidence." Galen v. Cnty. of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007) (citing Anderson, 477 U.S. at 248). Furthermore, the nonmoving party "must direct the court's attention to specific, triable facts. General references

---

    [5] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." L.R. 56-4.

    [6] Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'" Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:22-cv-00259-JVS (KESx)     Date November 6, 2023

Title    Tu Le et al. v. Prestige Community Credit Union et al.

without pages or line numbers are not sufficiently specific." S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003) (internal citations omitted).[7] Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion.

### III. DISCUSSION

    *A.    Request for Judicial Notice*

Prestige filed a request for judicial notice ("RJN") in support of its motion. (See Prestige RJN, Dkt. No. 56.) Plaintiffs filed an RJN in support of their opposition. (See Pl.'s RJN, Dkt. No. 77–5.) Specifically, Prestige seeks judicial notice of the following:

1. Records in Securities and Exchange Comm'n v. Kent R.E. Whitney, et al., No. 8:19-cv-00499-JVS (KESx) (C.D. Cal.)
2. First Amended Complaint in Securities and Exchange Comm'n v. Kent R.E. Whitney, et al., No. 8:19-cv-00499-JVS (KESx) (C.D. Cal.)
3. Declaration of Ty Martinez in support of Plaintiff's Application for a Temporary Restraining Order

Plaintiffs seek judicial notice of the following:

1. Plea Agreement of Kent R.E. Whitney in United States v. Kent R.E. Whitney, No. 11-cr-108 (N.D. Cal. Sept. 13, 2011)
2. First Amended Complaint in Securities and Exchange Comm'n v. Kent R.E. Whitney, et al., No. 8:19-cv-00499-JVS (KESx) (C.D. Cal.)

---

[7] Each fact in both the Statement of Uncontroverted Facts and the Statement of Genuine Disputes "must be numbered and must be supported by pinpoint citations (including page and line numbers, if available) to evidence in the record." L.R. 56-1, 2. "The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced in the Statement of Uncontroverted Facts, the Statement of Genuine Disputes, and the Response to Statement of Genuine Disputes." L.R. 56-4. At oral argument, Plaintiffs cited Reeves v. Safeway Stores, Inc., 121 Cal. App. 4th 95 (2004) in an attempt to remedy their inability to support their assertions with pinpoint citations, as opposed to general references. However, Reeves is a California Court of Appeal decision concerning California Code of Civil Procedure Section 437c, subdivision (b)(1). The case does not even mention Federal Rule of Civil Procedure 56.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00259-JVS (KESx) | Date | November 6, 2023 |
| Title | Tu Le et al. v. Prestige Community Credit Union et al. | | |

3. Declaration of Ty Martinez in support of Plaintiff's Application for a Temporary Restraining Order
4. Agreed Partial Judgment as to Kent R.E. Whitley [sic]
5. Information in United States v. Kent R.E. Whitney, No. 8:20-cr-00052-JLS (C.D. Cal. Apr. 15, 2020)
6. Plea Agreement of Kent R.E. Whitney
7. Receiver's 8th Status Report
8. Google Maps Photo of 3131 McKinney Ave., Dallas, TX taken in July 2018
9. Digital captures of the Church for the Healthy Self website, www.churchforthehealthyself.com, available via the Wayback Machine
10. Digital capture of the Prestige Community Credit Union website, prestigecu.org, available via the Wayback Machine
11. FIS website concerning its product ChexSystems Qualilife
12. Prestige Community Credit Union webpage about the health and history of the credit union on February 18, 2022

Under Federal Rule of Evidence 201, the Court may take judicial notice of matters of public record if the facts are not "subject to reasonable dispute." Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001); see Fed. R. Evid. 201(b). Therefore, the Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal citations and quotation marks omitted). The Court holds that all of the documents for which Prestige seeks judicial notice and documents 1–7 for which Plaintiffs seek judicial notice are matters of public record that are not subject to reasonable dispute. Accordingly, the Court **GRANTS** Prestige's request for judicial notice and **GRANTS** Plaintiffs' request for judicial notice of documents 1–7. To the extent that the Court does not rely on documents 8–12 in this Order, the request is **DENIED** as moot.

   B.   *Evidentiary Objections*

Prestige submitted evidentiary objections, (Dkt. Nos. 74, 81, 82). Plaintiffs also submitted evidentiary objections, (Dkt. No. 77), and Prestige responded (Dkt. No. 83).

When resolving a motion for summary judgment, courts may only consider admissible evidence. Fed. R. Civ. P. 56. On a motion for summary judgment, a party

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00259-JVS (KESx) | Date | November 6, 2023 |
| Title | Tu Le et al. v. Prestige Community Credit Union et al. | | |

may object that the material used to "dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). A court must rule on material evidentiary objections. Norse v. City of Santa Cruz, 629 F.3d 966, 973 (9th Cir. 2010).

The Court only considered admissible evidence in resolving Prestige's motion for summary judgment. When this Order cites evidence to which the parties have objected, the objection is impliedly overruled. Additionally, the Court declines to rule on objections to evidence upon which it did not rely.

Prestige objects to Enrique Rodriguez's Declaration ("Rodriguez Declaration") in its entirety because it consists of impermissible statements regarding Prestige's intent, motives, or state of mind. (Dkt. No. 81, at 1.) However, not all of the Rodriguez Declaration consists of impermissible statements. Accordingly, the Court **OVERRULES** Prestige's global objections to the Rodriguez Declaration.

Prestige also raises several objections to specific statements within the Declaration. (See generally id.) But the Court will only rule on specific lines and paragraphs that are relevant to determining if there are genuine disputes of material fact. In particular, paragraph 32 is relevant for the Court. Prestige objects that paragraph 32 of the Rodriguez Declaration consists of statements that lack foundation and consist of improper personal opinions. The Court agrees. Rodriguez's personal opinion that "the reason Prestige does not have the second page of the report is because it lists Whitney's financial fraud conviction" is improper. As Prestige contends, Rodriguez does not purport to have knowledge of ChexSystems reports ever identifying criminal information. (Id. at 37.) Nor has Rodriguez ever seen a ChexSystems report with a criminal conviction. (Id.) See Power Integrations, Inc. v. On Semiconductor Corp., 396 F. Supp. 3d 851, 866 (N.D. Cal. 2019) ("In the context of a motion for summary judgment, an expert must back up his opinion with specific facts. An expert's conclusory assertions are not sufficient to create a genuine dispute of material fact.") (internal citations omitted). Moreover, "[c]ourts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind." Lanard Toys v. Anker Play Prods., No. CV 19-4350, 2020 U.S. Dist. LEXIS 221783, at *19 (C.D. Cal. Nov. 12, 2020) (quoting Siring v. Or. State Bd. of Higher Educ., 927 F. Supp. 2d 1069, 1077 (D. Or. 2013)). The Court therefore **SUSTAINS in part** Objection 28 and will not consider the statement that "the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-cv-00259-JVS (KESx)   Date  November 6, 2023

Title  Tu Le et al. v. Prestige Community Credit Union et al.

reason Prestige does not have the second page of the report is because it lists Whitney's financial fraud conviction" in paragraph 32 of the Rodriguez Declaration.

  C. *Whether Texas Law Applies*

  Prestige argues that Texas law should apply to Plaintiffs' aiding and abetting claims. (MSJ at 12.)

  Federal courts sitting in diversity apply the procedural choice-of-law rules of the forum state. Alaska Airlines, Inc. v. United Airlines, Inc., 902 F.2d 1400, 1402 (9th Cir.1990). The Court thus applies California's choice-of-law rules. "When two states are potentially interested in having their laws applied, California courts employ a governmental interest analysis to determine possible conflicts of law for issues not governed by contractual choice of law provisions." Hill v. Novartis Pharm. Corp., No. 1:06-cv-939, 2012 U.S. Dist. LEXIS 38516, at *3–4 (E.D. Cal. Mar. 20, 2012). Here, it is undisputed that Plaintiffs and Prestige are not parties to a contractual relationship. (MSJ at 12; see generally Opp'n to MSJ.) No plaintiff was a member at Prestige. (MSJ at 12; see generally Opp'n to MSJ.) Thus, it is undisputed that there is no contractual choice-of-law provision applicable in this case. (MSJ at 12; see generally Opp'n to MSJ.) The Court must therefore conduct a choice-of-law analysis.

  The governmental interest test involves three steps. First, "the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different." Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95, 107 (2006). Second, if there is a difference in the laws, "the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists." Id. at 107–08. Third, if there is a "true conflict," the court "carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state," and then ultimately applies "the law of the state whose interest would be the more impaired if its law were not applied." Id. at 108. (internal quotation marks and citation omitted).

  1. First Step

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00259-JVS (KESx) | Date | November 6, 2023 |
| Title | Tu Le et al. v. Prestige Community Credit Union et al. | | |

The parties do not dispute that "a defendant may be held liable for aiding and abetting a tort" under California law. Biggins v. Wells Fargo & Co., 266 F.R.D. 399, 413 (N.D. Cal. 2009) (citing Casey v. U.S. Bank Nat'l Ass'n, 127 Cal. App. 4th 1138 (2005)). However, Prestige argues that aiding and abetting liability does not exist as a cause of action in Texas. (MSJ at 14.) See Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A., 800 Fed. Appx. 239, 249 (5th Cir. 2020) ("[A]iding and abetting does not exist as a distinct cause of action in Texas.") (citing In re DePuy Orthopaedics, Inc., 888 F.3d 753, 781–82 (5th Cir. 2018)). In In re DePuy Orthopaedics, the Fifth Circuit held that the district court "exceeded its circumscribed institutional role" by recognizing aiding and abetting as a distinct cause of action under Texas law. 888 F.3d at 781. The Fifth Circuit also noted that the "Texas Supreme Court has not expressly decided whether Texas recognizes a cause of action for aiding and abetting," and "[w]hen sitting in diversity, a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts." Id. For that reason, the Fifth Circuit in Midwestern Cattle Marketing held that it "cannot recognize a claim that the Texas Supreme Court has yet to expressly adopt." 800 Fed. Appx. at 250. Thus, this Court cannot recognize a cause of action for aiding and abetting a tort under Texas law.

Plaintiffs counter by citing the Texas Securities Act and a case regarding that Act, both of which are unrelated to the tort claims. Moreover, Plaintiffs acknowledge that "Texas may not recognize common law aiding and abetting liability for common law torts." (Opp'n to MSJ at 8.) At oral argument, Plaintiffs cited Rotstain v. Trustmark Nat'l Bank, No. 3:09-cv-2384, 2022 U.S. Dist. LEXIS 10332 (N.D. Tex. Jan. 20, 2022) to support their assertion that a claim for aiding and abetting fraud exists. However, that case dealt with aiding and abetting a Texas Securities Act violation. Id. at *13. Plaintiffs in this case have not alleged a Texas Securities Act violation, so Rotstain is inapposite to this case. Thus, Plaintiffs' attempt to show "no significant difference" between Texas and California law with statutory liability regarding the sale of securities is unavailing. (Id.) The Court concludes that Texas law conflicts with California law because there is no cause of action for aiding and abetting a tort under Texas law nor can this Court recognize such a cause of action. As such, if Texas law were to apply, Plaintiffs' claims for aiding and abetting fraud and aiding and abetting breach of fiduciary duty would fail as a matter of law. See Mazza v. Am. Honda Motor Co., 666 F.3d 581, 591 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00259-JVS (KESx) | Date | November 6, 2023 |
| Title | Tu Le et al. v. Prestige Community Credit Union et al. | | |

2012) (finding that "there are also material differences in the remedies given by state laws"). Because these differences are material, we move to the test's second step.[8]

    2.    Second Step

The second step requires the Court to "determine what interest, if any, each state has in having its own law applied to the case." Washington Mut. Bank v. Superior Court, 24 Cal. 4th 906, 920 (2001). "If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied." Cooper v. Tokyo Elec. Power Co. Holdings, 960 F.3d 549, 560 (9th Cir. 2020) (internal citation omitted).

Texas has chosen not to hold aiders and abettors liable for common law torts. Prestige argues that "Texas law is designed to limit the liability of its businesses, especially those conducting business solely within its borders." (MSJ at 16.) Prestige also contends that applying California law would "usurp Texas' interest in attracting businesses and holding them accountable under Texas law." (Id.)

---

[8] At oral argument, Plaintiffs raised, for the first time, the argument that their California aiding and abetting breach of fiduciary duty claim is not materially different from a knowing participation in breach of fiduciary duty claim in Texas. In Turk v. Pershing LLC, No. 3:09-cv-2199, 2023 U.S. Dist. LEXIS 864, at *7 (N.D. Tex. Jan. 3, 2023), the court held that "Plaintiffs and Intervenors' claim for aiding and abetting breach of fiduciary duty fails because there is no explicit cause of action under Texas common law." In Turk, the court noted that "[a]lthough there is no cause of action for aiding and abetting breach of fiduciary duty, Texas has long recognized a claim for knowing participation in breach of fiduciary duty." Id. at *7–8. "To succeed on a claim for knowing participation in breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." Id. at *20 (internal quotation marks omitted). The Turk court also noted that "[t]he cases addressing claims for knowing participation in a breach of fiduciary duty establish that the third-party defendant must have had actual knowledge of the breach. Courts have made clear that a less culpable mental state, such as constructive knowledge, will not suffice." Id. (internal citations omitted). However, a plaintiff may prevail on a knowing participation claim with circumstantial evidence, but only if that claim is brought under the Texas Securities Act. Id. For reasons discussed below, Plaintiffs would be unable to prevail under a knowing participation in breach of fiduciary duty claim because they fail to show that Prestige knew or was aware of the fraud.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00259-JVS (KESx) | Date | November 6, 2023 |
| Title | Tu Le et al. v. Prestige Community Credit Union et al. | | |

On the other hand, Plaintiffs conclusory allege that "Prestige's reach into California resulted in the victimization of nearly 500 residents with the vast majority of victimizing transactions involving a California Shared Branch." (Opp'n to MSJ at 7.) While Plaintiffs fail to show California's interest in having its law applied to this case, California does have a legitimate interest in providing a remedy to its residents from aiders and abettors.

"At this point in the analysis, our only consideration is whether each jurisdiction has legitimate interests in seeing its own law applied in this case and whether those interests conflict. Weighing the strength of California's interests against [Texas's] occurs at the third step, which we need only reach if there is a true conflict." Cooper, 960 F.3d at 560. Because California's interest in holding aiders and abettors liable in tort to ensure a remedy for its residents conflicts with Texas's interest in limiting the liability of its businesses, the Court finds that a "true conflict" exists here. Thus, we move to the third step of the analysis.

### 3. Third Step

"Once a true conflict is identified, we must consider the comparative impairment step of the analysis, which seeks to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state. The conflict should be resolved by applying the law of the state whose interest would be the more impaired if its law were not applied." Id. at 561 (internal quotation marks and citation omitted). At this step, "our task is not to determine whether the [Texas] rule or the California rule is the better or worthier rule, but rather to decide—in light of the legal question at issue and the relevant state interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case." McCann v. Foster Wheeler LLC, 48 Cal. 4th 68, 97 (2010).

It is undisputed that Prestige is a Texas community credit union that conducts business solely in Texas. (SOF ¶¶ 68, 74.) Prestige has only two locations and both are in Texas. (Id. ¶ 74.) All of Prestige's employees work in Texas. (Id.) Prestige has no physical location or employees outside of Texas. (Id.) The only reason California is implicated in this action is because Plaintiffs are residents of California. Moreover, Plaintiffs contend that Prestige used "its California shared branches to service [the Church] in California." (Opp'n to SMJ at 7.) While Prestige does participate in a shared

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00259-JVS (KESx) | Date | November 6, 2023 |
| Title | Tu Le et al. v. Prestige Community Credit Union et al. | | |

branch agreement, it is undisputed that shared branches are not owned and operated by Prestige. (SOF ¶ 38.) Credit unions, such as Prestige, have shared branch agreements that allow credit unions to process transactions for each other. (Id.) Each shared branch location is a "separate and distinct financial institution," which is governed and operated by its own rules and guidelines. (Id.) Moreover, there is no obligation to monitor transactions that occur at shared branches. (Id. ¶ 37.) Nor is Prestige provided with individual checks and deposit details that take place at a shared branch location. (Id. ¶ 64.) Neither Gugino nor Shanafelt were aware that most of the Church's transactions were conducted at shared branches. (Id. ¶ 39.) Gugino and Shanafelt knew the Church used shared branches, included some in California, but they did not know the volume or dollar amounts of such transactions. (Id.) It is also undisputed that Plaintiffs do not have accounts at Prestige. Thus, Prestige contends that "California's interest in having its law apply to Prestige is severely attenuated." (MSJ at 17.) The Court agrees.

Failure to apply Texas law in these circumstances would significantly impair Texas's interests. Applying California law in this case would allow any California resident to bring a cause of action for aiding and abetting against Prestige or any other Texas-based credit union based on transactions that occur at shared branches in other states by non-parties. Such a result would impair Texas's interests by limiting the number of Texas credit unions participating in shared branch agreements for fear of aiding and abetting liability. See Cooper, 960 F.3d at 562 ("California's courts have frequently applied foreign laws that serve to protect businesses by limiting liability, even when applying that law precludes recovery by injured California residents.") For the aforementioned reasons, Texas law applies to the aiding and abetting claims against Prestige.

Because Texas does not recognize a cause of action for aiding and abetting a tort, Plaintiffs' aiding and abetting fraud and aiding and abetting breach of fiduciary duty claims are **DISMISSED**.[9]

D. *Violation of California Penal Code § 496*

---

[9] In the alternative, Prestige argues that even if California law is applied, Plaintiffs cannot show that Prestige knew of the Church's fraud. (MSJ at 18–21.) For reasons stated below, the Court agrees that even if California law applied to Plaintiffs' aiding and abetting claims, the claims would fail because Plaintiffs cannot establish that Prestige had knowledge of the fraud.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00259-JVS (KESx) | Date | November 6, 2023 |
| Title | Tu Le et al. v. Prestige Community Credit Union et al. | | |

In the Complaint, "Plaintiffs seek statutory treble damages, costs of suit, and reasonable attorney's fees" pursuant to California Penal Code § 496(c). (Compl., Dkt. No. 1 ¶ 73.) Prestige argues that Plaintiffs' claim under California Penal Code § 496(a) is time-barred because "[c]laims based upon statutes which provide for the mandatory recovery of damages in addition to actual losses, such as treble damages, are considered penal in nature and are thus governed by the one-year statute of limitations period under [California Code of Civil Procedure] § 340(a)." (MSJ at 22.)

Plaintiffs contend that because "section 496 is not simply about treble damages the statute of limitations is three years." (Opp'n to MSJ at 16.) To support this assertion, Plaintiffs cite Von Saher v. Norton Simon Museum of Art at Pasadena, 578 F.3d 1016 (9th Cir. 2009); McCraner v. Wells Fargo & Co., No. 21-cv-1246, 2023 U.S. Dist. LEXIS 55863 (S.D. Cal. Mar. 30, 2023); and Evans v. ZB, N.A., No. 2:17-cv-1123, 2019 U.S. Dist. LEXIS 218432 (E.D. Cal. Dec. 18, 2019). However, in Von Saher, the Ninth Circuit focused on the three-year statute of limitations under California Code of Civil Procedure § 338. 578 F.3d 1016. Von Saher did not even address the California Penal Code § 496 claim, which provides for treble damages. Id. Morever, in Evans, the district court failed to consider the punitive nature of treble damages available under California Penal Code § 496. 2019 U.S. Dist. LEXIS 218432, at *15. Rather, in stating that the "statute of limitations applicable to a Section 496 claim is three years," the district court in Evans merely cited California Code of Civil Procedure § 338 and Von Saher. Id. Additionally, in McCraner, the district court held that "the statute of limitations for a claim for violation of California Penal Code § 496 is three years" by citing to Evans and California Code of Civil Procedure § 338. 2023 U.S. Dist. LEXIS 55863, at *10. Similar to Evans, the district court in McCraner failed to address how recovery for treble damages under California Penal Code § 496(a) is considered penal in nature. Id.

A civil claim under California Penal Code § 496(c) may be brought for "three times the amount of actual damages," which constitute treble damages. "[T]he settled rule in California is that statutes which provide for recovery of damages additional to actual losses incurred, such as double or treble damages, are considered penal in nature [], and thus governed by the one-year period of limitations stated in section 340, subdivision (1)." Prudential Home Mortg. Co. v. Superior Court, 66 Cal. App. 4th 1236, 1242 (1998) (quoting G.H.I.I. v. MTS, Inc., 147 Cal. App. 3d 256, 278 (1983)). Thus, the Court finds that a one-year statute of limitations period applies to the claim for treble damages. Here, the Securities and Exchange Commission lawsuit began in March 14, 2019. (Pl.'s RJN,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00259-JVS (KESx) | Date | November 6, 2023 |
|---|---|---|---|

| Title | Tu Le et al. v. Prestige Community Credit Union et al. | | |
|---|---|---|---|

at 1 ¶ 1.) Thus, Plaintiffs' claim for treble damages under California Penal Code § 496(c) lapsed on March 14, 2020. However, Plaintiffs did not file their Complaint until February 18, 2022. (See generally Compl.) Plaintiffs' claim for treble damages is time-barred under California Penal Code § 496(c).

Plaintiffs do not seek recovery of actual damages, but Plaintiffs do seek recovery for costs of suit and reasonable attorney's fees under California Penal Code § 496(c), which are not time-barred. Thus, the civil claim under California Penal Code § 496(c) regarding recovery for costs of suit and reasonable attorney's fees is subject to a three-year statute of limitations.

Because the entire claim is not time-barred, the Court considers the merits of the claim. Section 496(a) imposes criminal liability on "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained." One theory of theft, as defined by Penal Code § 484, includes "false pretenses, which is the consensual but fraudulent acquisition of property from its owner." Denker v. Ricchio, No. 8:21-cv-1668, 2022 U.S. Dist. LEXIS 111197, at *9 (C.D. Cal. May 12, 2022) (citing Bell v. Feibush, 212 Cal. App. 4th 1041, 1049 (2013)). "To prove theft, a plaintiff must establish criminal intent on the part of the defendant beyond 'mere proof of nonperformance or actual falsity.'" Siry Inv., L.P. v. Farkhondehpour, 13 Cal. 5th 333, 361–62 (2022) (quoting People v. Ashley, 42 Cal. 2d 246, 264 (1954)). "If misrepresentations or unfulfilled promises 'are made innocently or inadvertently, they can no more form the basis for a prosecution for obtaining property by false pretenses than can an innocent breach of contract.'" Id. (quoting Ashley, 42 Cal. 2d at 264).

Thus, to establish a claim for the receipt of stolen property under California Penal Code § 496(a), Plaintiffs "must prove (1) the property was stolen; (2) the defendant knew it was stolen; and (3) the defendant had possession of it." In re Anthony J., 117 Cal. App. 4th 718, 728 (2004) (citations omitted). Section 496(a) further provides that a violation occurs when a person buys or receives stolen property, "knowing the property to be so stolen," or "conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner . . . ." "Although it is not a specific intent crime, a necessary element of the offense of receiving stolen property is actual knowledge of the stolen character of the property." LA Tech & Consulting, LLC v. Am. Express Co., No. SA CV

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00259-JVS (KESx) | Date | November 6, 2023 |
| Title | Tu Le et al. v. Prestige Community Credit Union et al. | | |

22-1213, 2022 U.S. Dist. LEXIS 215156, at *9 (C.D. Cal Nov. 28, 2022) (quoting People v. Rodriguez, 177 Cal. App. 3d 174, 179 (1986)).

      Prestige argues that Plaintiffs cannot prove that Prestige had actual knowledge that the funds were stolen. (MSJ at 22.) The Court agrees. As previously stated, Prestige conducts business solely in Texas. (SOF ¶¶ 68, 74.) Although Prestige participates in a shared branch agreement, shared branches are not owned and operated by Prestige. (Id. ¶ 38.) There is also no obligation to monitor transactions that occur at shared branches. (Id. ¶ 37.) Nor is Prestige provided with individual checks and deposit details that take place at a shared branch location. (Id. ¶ 64.) Thus, Prestige was unaware that most of the Church's transactions were conducted at shared branches. (Id. ¶ 39.) While Gugino and Shanafelt knew the Church used shared branches, they did not know the volume or dollar amounts of such transactions. (Id.) The mere fact that Prestige held the account for the Church and participated in a shared branch agreement does not impute knowledge onto Prestige that it knew the funds were stolen when the transfers at the shared branches in California took place.

      Plaintiffs have failed to present any facts that suggest Prestige knew the Church was stealing the investors' funds. Instead, Plaintiffs conclusory allege that "there is reason to believe that the missing second page of the [ChexSystems] report contained reference to Whitney's recent convictions for financial fraud." (Opp'n to MSJ at 9.) Plaintiffs do not cite to any evidence in the record that supports this assertion. Nor do Plaintiffs present admissible evidence showing that a ChexSystems report does include such information. Moreover, even if Prestige was aware of Whitney's prior financial fraud convictions, Plaintiffs fail to show how knowledge of that conviction resulted in Prestige's knowledge that the Church obtained its money by false pretenses. Plaintiffs therefore cannot show that Prestige knew that the Church obtained its money by false pretenses, which is a required element under Penal Code § 496(a).

      Accordingly, the Court **GRANTS** Prestige summary judgment with respect to the California Penal Code § 496 claim.

      E.    *Assisting Financial Elder Abuse*

      California Welfare and Institutions Code § 15610.30 prohibits financial elder abuse. Under California Welfare and Institutions Code § 15610.30(a)(2), "financial

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00259-JVS (KESx) | Date | November 6, 2023 |
| Title | Tu Le et al. v. Prestige Community Credit Union et al. | | |

abuse" occurs when a person "[a]ssists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." An "elder" is defined as any person residing in California who is age 65 or older. Cal. Welfare & Inst. Code § 15610.27. Because Plaintiffs have failed to show that Prestige knew of the Church's alleged Ponzi scheme, Plaintiffs cannot prove that Prestige had the intent to defraud an elder person. Nor do Plaintiffs argue that Prestige had an intent to defraud. (See Opp'n to MSJ at 16.) Instead, Plaintiffs focus on "wrongful use." (Id.) Wrongful use means that the defendant "knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." Cal. Welf. & Inst. Code § 15610.30(b). Without any reference to the facts or any other evidence in the record, Plaintiffs conclusory allege that "[t]here is clearly sufficient evidence to support an inference that Prestige should have known that assisting [the Church] was likely to harm all its victims." (Opp'n to MSJ at 16.) Plaintiffs have failed to show that there is a genuine issue of material fact as to whether Prestige should have known that any of the possible Plaintiffs would be age 65 or older. (See generally Opp'n to MSJ; SOF.) Thus, Plaintiffs have failed to show one of the key elements of financial elder abuse, which is that Prestige knew or should have known that Plaintiffs would be elders. Nor have Plaintiffs shown that Prestige should have known of the Church's alleged Ponzi scheme. As previously mentioned, it is undisputed that Prestige conducts business solely in Texas. (SOF ¶ 74.) While Prestige is part of a shared branch agreement, Prestige is not provided with individual checks and deposit details that take place at a shared branch location. (Id. ¶¶ 38, 64.) Neither Gugino nor Shanafelt were aware that most of the Church's transactions were conducted at shared branches. (Id. ¶ 39.) Prestige also did not know that Whitney had been previously convicted of fraud. (Id. ¶ 20.) King had some knowledge of Whitney's past criminal conduct, but King never shared this knowledge with Prestige. (Id. ¶ 21.) These facts, when read in the light most favorable to the nonmoving party, fail to lead a reasonable person to believe that Prestige should have known of the Church's alleged Ponzi scheme and its harm to elders.

Accordingly, the Court **GRANTS** Prestige summary judgment with respect to the assisting financial elder abuse claim.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Prestige's motion for summary judgment and **DENIES** Plaintiffs' motion for class certification as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00259-JVS (KESx) | Date | November 6, 2023 |
| Title | Tu Le et al. v. Prestige Community Credit Union et al. | | |

**IT IS SO ORDERED.**